**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| KIPLEY ROYDON MARKS, <br><br> Plaintiff, <br><br> v. <br><br> PNC BANK, N.A. and CITIBANK N.A., <br><br> Defendants. | Case No. 1:24-cv-02145-JPC |

## PNC BANK, N.A.'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

John F. Marsh, Trial Attorney (0065345)
John P. Miller (0097161)
**Bailey Cavalieri LLC**
10 West Broad Street, Suite 2100
Columbus, Ohio  43215-3422
Telephone No. (614) 229-3230
Facsimile No. (614) 221-0479
Email:  jmarsh@baileycav.com
      jmiller@baileycav.com

Thomas F. Burke (*pro hac vice*)
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
T: 215.864.8463
F: 215.864.8999
Email:   burket@ballardspahr.com

*Counsel for Defendant PNC Bank, N.A.*

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................ 1

II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................... 2

    A. Factual Background ........................................................................................ 2

    B. Procedural History .......................................................................................... 3

III. LEGAL STANDARD................................................................................................. 3

IV. ARGUMENT ............................................................................................................. 4

    A. Plaintiff fails to state a claim under Ohio Rev. Code Ann. § 1304.62.
        .......................................................................................................... 4

        1. Plaintiff has not pleaded actual knowledge of a mismatch
            between the beneficiary's name and account number. .............................. 4

        2. Plaintiff cannot state a claim under Ohio Rev. Code Ann.
            § 1304.62 because Plaintiff is not in privity with PNC Bank.
            .......................................................................................................... 8

    B. Plaintiff has failed to state a claim for negligence. ............................................. 10

        1. Banks owe no duty of care to non-customers. ......................................... 10

        2. The Bank Secrecy Act does not give rise to a duty of care. ..................... 11

        3. PNC Bank's policies and procedures do not give rise to a
            duty of care. ........................................................................................... 12

    C. Plaintiff has failed to state a claim for conversion. ............................................. 13

        1. Plaintiff's conversion claim is preempted by the UCC. ........................... 13

        2. Plaintiff has failed to plead the elements of conversion. ........................ 15

V. CONCLUSION.......................................................................................................... 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. Sogliuzzo*,
625 F. App'x 565 (3d Cir. 2015) ...................................................................10

*Approved Mortgage Corp. v. Truist Bank*,
106 F.4th 582 (7th Cir. 2024) .......................................................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................3, 4, 5, 12

*B-Smith Enter., LP v. Bank of Am., N.A.*,
2023 WL 2034419 (11th Cir. Feb. 16, 2023) ................................................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 554 (2007)..........................................................................3, 4, 5, 12

*Collins v. Nat'l City Bank*,
2003 WL 22971874 (Ohio Ct. App. Dec. 19, 2003)......................................15

*Dice v. White Fam. Cos.*,
878 N.E.2d 1105 (Ohio Ct. App. Oct. 26, 2007) ..........................................13

*Driessen v. Woodforest Nat. Bank*,
940 F. Supp. 2d 584 (S.D. Ohio 2013) ..........................................................11

*Eisenberg v. Wachovia Bank, N.A.*,
301 F.3d 220 (4th Cir. 2002) ........................................................................10

*Flaherty v. Wells Fargo Bank Nat'l Ass'n*,
623 F. Supp. 3d 1124 (D. Nev. 2022)..............................................................5

*Foster v. PNC Bank*,
2024 WL 2883473 (N.D. Ohio May 3, 2024)..................................................11

*GN Pro. Grp., LLC v. Well Done ASAP, LLC*,
2025 WL 327927 (N.D. Ill. Jan. 29, 2025)......................................................5

*Grain Traders v. Citibank, N.A.*,
160 F.3d 97 (2d Cir. 1998)...............................................................................9

*Gray v. Ben*,
2022 WL 16859609 (C.D. Cal. Nov. 9, 2022)................................................12

*GSR Mkts. Ltd. v. McDonald*,
  2024 WL 3311315 (11th Cir. July 5, 2024)........................................................10

*Harrington v. PNC Bank, N.A.*,
  684 F. Supp. 3d 631 (E.D. Mich. 2023).............................................................6

*Hofschutle v. Suntrust Banks, Inc.*,
  2021 WL 5230732 (N.D. Ga. March 4, 2021).....................................................12

*Imperium Logistics, LLC v. Truist Fin. Corp.*,
  686 F. Supp. 3d 600 (E.D. Mich. 2023).............................................................9

*Kent Grp. Partners, LLC v. Citizens Bank, NA*,
  2024 WL 945239 (6th Cir. Mar. 5, 2024)......................................................4, 5, 7

*Kent Grp. Partners, LLC v. Citizens Bank, Nat'l Ass'n*,
  688 F. Supp. 3d 608 (N.D. Ohio 2023), *aff'd by Kent*, 2024 WL 945239...............5, 12

*Kirschner v. Wells Fargo Bank*,
  2021 WL 5545957 (E.D. Mich. July 19, 2021) ...................................................15

*Legends Title, LLC v. Cap. One, N.A.*,
  659 F. Supp. 3d 637 (D. Md. 2023)...................................................................6

*Madison Title Agency, LLC v. Bank of Am., N.A.*,
  672 F. Supp. 3d 1313 (N.D. Ga. 2023)..............................................................6

*Meridian Growers Processing, Inc. v. JP Morgan Chase Bank, N.A.*,
  2024 WL 4333146 (E.D. Cal. Sept. 27, 2024)....................................................6

*Midwest Feeders, Inc. v. Bank of Franklin*,
  886 F.3d 507 (5th Cir. 2018) ...........................................................................10

*Miller v. Bank of Am., N.A.*,
  2022 WL 3704093 (E.D. Cal. Aug. 26, 2022)....................................................12

*Munn v. Wells Fargo Bank, N.A.*,
  2023 N.Y. Misc. LEXIS 33570 (N.Y. Sup. Westchester Cty. Jan. 9,
  2023) .............................................................................................................9

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Raczkowski*,
  764 F.3d 800 (8th Cir. 2014) ...........................................................................10

*Parlin Fund LLC v. Citibank N.A.*,
  2013 WL 3934997 (S.D. Ohio July 30, 2013)....................................................11

*Peter E. Shapiro, P.A. v. Wells Fargo Bank, N.A.*,
  795 F. App'x 741 (11th Cir. 2019) ...................................................................1

iii

*RAE Assocs., Inc. v. Nexus Commc'ns, Inc.*,
36 N.E.3d 757 (Ohio Ct. App. June 4, 2015)............................................................15

*Scura, Wigfield, Heyer, Stevens & Cammarota LLP v. Citibank, N.A.*,
2022 WL 16706948 (D.N.J. Oct. 3, 2022).....................................................................9

*SFS Check, LLC v. First Bank of Delaware*,
774 F.3d 351 (6th Cir. 2014) ......................................................................................10

*Sharkey v. J.P. Morgan Chase & Co.*,
805 F. Supp. 2d 45 (S.D.N.Y. 2011)...........................................................................11

*Shecter Landscaping, Inc. v. JPMorgan Chase Bank NA*,
614 F. Supp. 3d 553 (E.D. Mich. 2022).......................................................................12

*Simple Helix, LLC v. Relus Techs., LLC*,
493 F. Supp. 3d 1087 (N.D. Ala. 2020).......................................................................10

*Skin Studio Day Spa, LLC v. Wells Fargo Bank, NA*,
711 F. Supp. 3d 593 (D.S.C. 2024)................................................................................6

*Solo v. UPS Co.*,
819 F.3d 788 (6th Cir. 2016) .........................................................................................3

*Squeeze Me Once, LLC v. SunTrust Bank*,
630 F. Supp. 3d 763 (M.D. La. 2022)............................................................................6

*Sunset Cmty. Health Ctr., Inc. v. Cap. One Fin. Corp.*,
652 F. Supp. 3d 1020 (D. Minn. 2023)........................................................................14

*Thompson v. Citizens Nat'l Bank*,
2016 WL 5076053 (N.D. Ohio Sept. 20, 2016)......................................................13, 14

*Title, Inc. v. U.S. Bancorp*,
--- F. Supp. 3d ---, 2024 WL 3761258 (E.D. Mich. Aug. 12, 2024).......................6, 14

*Towne Auto Sales, LLC v. Tobsal Corp.*,
2017 WL 5467012 (N.D. Ohio Nov. 14, 2017).......................................................10, 11

*United States v. Davis*,
2023 WL 195159 (3d Cir. Jan. 17, 2023) ......................................................................1

*VIP Mortg. Corp. v. Bank of Am., N.A.*,
769 F. Supp. 2d 20 (D. Mass. 2011)............................................................................11

*Wellton Int'l Express v. Bank of China (Hong Kong)*,
612 F.Supp.3d 358 (S.D.N.Y. Apr. 3, 2020) .................................................................9

iv

*Wheels on the Bus Inc. v. Wells Fargo Bank, N.A.*,
   2023 N.Y. Misc. LEXIS 2221 (N.Y. Sup. Ct. Suffolk Cty. 2023) ................................9

*Wright v. Citizen's Bank of E. Tennessee*,
   640 F. App'x 401 (6th Cir. 2016) .................................................................................14

*Zhejiang Matrix SCM Co. v. PNC Bank*,
   2024 WL 1096534 (E.D. Pa. Mar. 13, 2024)..................................................................9

**Statutes**

Ohio Rev. Code Ann. § 1301.202(B) ...................................................................................5

Ohio Rev. Code Ann. § 1304.51.......................................................................................8, 14

Ohio Rev. Code Ann. § 1304.62........................................................................... *passim*

Ohio Rev. Code Ann. § 1304.64(B) ....................................................................................8

UCC § 4A-102, cmt. ...........................................................................................................13

UCC § 4A-207 .........................................................................................................4, 5, 9, 15

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ........................................................................3, 4

I.    **INTRODUCTION**

Plaintiff Kipley Roydon Marks alleges he fell victim to a "business email compromise" scam, which relies on "deception and social engineering to convince victims—including companies . . . to send money, usually via wire transfer, to bank accounts controlled by criminal actors." *United States v. Davis*, 2023 WL 195159, at *6 n.3 (3d Cir. Jan. 17, 2023) (quoting Federal Bureau of Investigation, Business Email Compromise and Real Estate Wire Fraud, 4 (2022)).

The typical business email compromise scam follows a well-worn pattern. *See generally, e.g.*, *Peter E. Shapiro, P.A. v. Wells Fargo Bank, N.A.*, 795 F. App'x 741 (11th Cir. 2019). The fraudster hacks into someone's email account and, by monitoring the account, learns that the accountholder expects to receive a wire transfer. Using the hacked email account, the fraudster poses as the accountholder (e.g., the party expecting payment) and sends an email to the client or customer who intends to wire funds. The fraudster sends new wire instructions, thereby redirecting funds to a different bank account number.

From there, the victim follows the fraudster's instructions, typically ordering a wire transfer naming the intended payee but directing funds to some account that does not belong to the intended payee—i.e., the bank account specified by the fraudster. The bank that ultimately receives the wire transfer, therefore, credits the money to the account identified by number in the wire transfer order, often using an entirely automated system. The accountholder, who may be a fraudster or a "middle man" in the fraudster's scheme, withdraws the money and is never found.

As one Circuit Court has observed, "[a] quick phone call from the [victim] to [the intended payee] before initiating the wire probably would . . . reveal[] the fraud and save[] the parties a great deal of time and money." *Id.* at 744 n.4. Unfortunately, it appears that no

1

such call was made here. Instead, Plaintiff alleges that despite exchanging emails regarding payments and wiring instructions with the intended recipient, a fraudster subsequently sent him "updated" wiring instructions with a different account number. Plaintiff disregarded the original wire instructions and wired funds to an account specified by the fraudster at Defendant PNC Bank, N.A. (PNC Bank).

Plaintiff now seeks to blame PNC Bank for his loss, alleging causes of action for violation of Ohio Rev. Code Ann. § 1304.62, negligence, and conversion. But Plaintiff's claims should be dismissed with prejudice for three reasons. First, Plaintiff cannot bring a claim against PNC Bank under Ohio Rev. Code § 1304.62 because Plaintiff (1) fails to plausibly allege facts giving rise to a reasonable inference that PNC Bank had actual knowledge of the fraudulent transfer; (2) fails to allege that PNC Bank's behavior is not protected by a safe harbor provision in the Uniform Commercial Code (UCC); and (3) lacks privity with PNC Bank. Second, Plaintiffs' negligence claim independently fails because PNC Bank owed Plaintiff no duty of care. Plaintiff has not alleged that he was a PNC Bank customer, and it is well-settled that banks owe no duty of care to non-customers. Finally, Plaintiff's conversion claim is preempted by the UCC and fails to establish that PNC Bank committed any wrongdoing.

For these reasons, as further explained below, PNC Bank's motion should be granted, and the Complaint should be dismissed with prejudice.

## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.  Factual Background

Plaintiff is a citizen of New Zealand. (ECF No. 1, Complaint (Compl.) at ¶ 3.) Plaintiff sought to invest in Nyriad Inc., a company located in California. (*Id.*) In or about December 2022, after "the Nyriad CFO emailed Plaintiff wire instructions to Nyriad's

2

account at Silicon Valley Bank," a fraudster "used a spoofed email address to email Plaintiff with 'confirmation' of the share purchase price and 'updated' wire instructions." (*Id.* at ¶¶ 13–14.) Plaintiff, apparently without further confirmation, wired $1 million, through Bank of New Zealand, to the fraudster's PNC Bank account on or about December 15, 2022. (*Id.* at ¶ 15.)

Plaintiff now attempts to hold PNC Bank liable on the theory that PNC Bank allegedly knew, or should have known, that the fraudulent account was not associated with Nyriad Inc. (*Id.* at ¶ 66.) Plaintiff seeks to recover the amount wired to the fraudster, i.e., $1 million, interest, punitive damages, and with costs and fees. (*Id.* at p. 21.)

### B.  Procedural History

Plaintiff filed the Complaint on December 10, 2024. (ECF No. 1.) The Complaint includes three causes of action against PNC Bank for violation of Ohio Rev. Code § 1304.62, negligence, and conversion. (Compl. at ¶¶ 61–67, 75–93.) PNC Bank now moves for dismissal with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## III.  LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(6), a court must accept all well-pleaded allegations of material fact as true and draw all reasonable inferences in favor of the plaintiff. *Solo v. UPS Co.*, 819 F.3d 788, 793 (6th Cir. 2016). The Court, however, need not accept as true a legal conclusion presented as a factual allegation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

3

the defendant is liable for the misconduct alleged." *Id.* at 678. A pleading that offers only "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not survive a motion to dismiss under Rule 12(b)(6). *Id.* (quoting *Twombly*, 550 U.S. at 555).

**IV.    ARGUMENT**

> **A.    Plaintiff fails to state a claim under Ohio Rev. Code Ann. § 1304.62.**
>
> > **1.    Plaintiff has not pleaded actual knowledge of a mismatch between the beneficiary's name and account number.**

The situation alleged here, i.e., where a payment order describes a beneficiary by a name and a bank account number that identify different persons, is governed by the Uniform Commercial Code (UCC) Article 4A, § 4A-207(b) ("Misdescription of Beneficiary"). In relevant part, Section § 4A-207, which is codified in Ohio law as Ohio Rev. Code Ann. § 1304.62, states:

> (b) If a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons, the following rules apply:
>
> (1) Except as otherwise provided in subsection (c), if the beneficiary's bank does not know that the name and number refer to different persons, it may rely on the number as the proper identification of the beneficiary of the order. The beneficiary's bank need not determine whether the name and number refer to the same person.

UCC § 4A-207; Ohio Rev. Code Ann. § 1304.62.

In short, as recently recognized by the Sixth Circuit in a factually similar case, "if the receiving bank does not know that the name and account number refer to different persons, then it may rely on the number as the proper identification of the beneficiary." *Kent Grp. Partners, LLC v. Citizens Bank, NA*, 2024 WL 945239, at *1 (6th Cir. Mar. 5, 2024) (quotation marks and citations omitted). "When the receiving bank relies on the

account number, **a plaintiff can establish liability only if it proves that the bank had 'actual knowledge' of the discrepancy in the instructions.**" *Id.* (citing Ohio Rev. Code Ann. § 1301.202(B)) (emphasis added).

This rule stems from the underlying reality that "[a] very large percentage of payment orders issued to the beneficiary's bank by another bank are processed by automated means using machines capable of reading orders on standard formats that identify the beneficiary by an identifying number or the number of a bank account." UCC § 4A-207, Cmt. 2. "Subsection (b) allows banks to utilize automated processing by allowing banks to act on the basis of the number without regard to the name if the bank does not know that the name and number refer to different persons." *Id.* The rationale is simple: under a more onerous duty to identify such mismatches, "the benefits of automated payment are lost." *Id.*

Applying that rule under the standard established by *Iqbal* and *Twombly*, a plaintiff claiming that a bank defendant had actual knowledge of a discrepancy between beneficiary name and account number must plead "particular facts" supporting that an employee at the bank had actual knowledge of a mismatch. *See Kent Grp. Partners, LLC v. Citizens Bank, Nat'l Ass'n,* 688 F. Supp. 3d 608, 613 (N.D. Ohio 2023), *aff'd by Kent*, 2024 WL 945239 (citing *Flaherty v. Wells Fargo Bank Nat'l Ass'n*, 623 F. Supp. 3d 1124, 1131 (D. Nev. 2022)). Conclusory allegations that the bank actually knew of the mismatch, or allegations merely of constructive knowledge (such as that the bank "should have known" of the mismatch), are insufficient to state a claim. *Kent Grp. Partners, LLC*, 2024 WL 945239, at *1. Federal district courts around the country have dismissed similar claims on that basis. *See, e.g., GN Pro Grp., LLC v. Well Done ASAP, LLC*, 2025 WL 327927, at *3 (N.D. Ill.

5

Jan. 29, 2025); *Meridian Growers Processing, Inc. v. JP Morgan Chase Bank, N.A.*, 2024 WL 4333146 (E.D. Cal. Sept. 27, 2024); *Title, Inc. v. U.S. Bancorp*, --- F. Supp. 3d ---, 2024 WL 3761258, at *2–3 (E.D. Mich. Aug. 12, 2024); *Skin Studio Day Spa, LLC v. Wells Fargo Bank, NA*, 711 F. Supp. 3d 593 (D.S.C. 2024); *Harrington v. PNC Bank, N.A.*, 684 F. Supp. 3d 631, 634 (E.D. Mich. 2023); *Madison Title Agency, LLC v. Bank of Am., N.A.*, 672 F. Supp. 3d 1313, 1316–17 (N.D. Ga. 2023); *Legends Title, LLC v. Cap. One, N.A.*, 659 F. Supp. 3d 637, 653 (D. Md. 2023); *Squeeze Me Once, LLC v. SunTrust Bank*, 630 F. Supp. 3d 763, 775 (M.D. La. 2022).

Here, the Complaint supports its conclusory assertions of "actual knowledge" (*see* Compl. ¶¶ 46–47) with a conflicting jumble of speculative assertions. First, according to the Complaint, the beneficiary account (i.e., the account that received the funds at issue) was fraudulently opened for an unspecified "imposter shell company" that was either *not* named Nyriad Inc. (the intended beneficiary), or it was *fraudulently* named Nyriad Inc. (*See id.* ¶¶ 24–27.) Second, Plaintiff alleges that PNC Bank, pursuant to unspecified legal obligations, maintains internal controls designed to detect the opening of potentially fraudulent accounts by collecting and authenticating corporate documentation, (*see id.* ¶¶ 21–23), but that here, PNC Bank either did *not* collect those documents, or it *did* collect the documents but negligently failed to notice indicators of fraud, *or* it noticed such indicators but was complicit in the fraud (*see id.* ¶¶ 29–30). Third, PNC Bank allegedly engages in "ongoing automated monitoring of accounts" to determine whether activity matches expected parameters for a given business, (*see id.* ¶¶ 31–32), but either flagged the transaction as suspicious and declined to stop it, or negligently failed to flag the transaction. (*see id.* ¶¶ 33–36). And fourth, PNC Bank was *either* negligently or willfully blind to

6

the fraudulent account opening, or actually knew the account was fraudulent and therefore "there could be no match" between the account and any legitimate beneficiary. (*See id.* ¶¶ 37–43.)

The absence of plausible factual content in Plaintiff's allegations is demonstrated by Plaintiff's apparent determination to capture any potential factual scenario that might have occurred: either PNC Bank noticed a fraudulent account opening but negligently failed to act, or it noticed the mismatch at the time of the fraudulent activity based on active monitoring but failed to act, or it did not notice either of these things but should have, or it was actually complicit in the fraud. The self-contradictory nature of these allegations reveal their lack of plausibility. They are also overtly speculative: Plaintiffs' allegations of actual knowledge are framed in terms of what Plaintiff believes PNC Bank "would have" done. (*See, e.g., id.* ¶¶ 33 (anomalous activity "would have [been] made aware to PNC employees"), 34 (filing suspicious activity report "would have further alerted PNC" to the account's fraudulent nature), 41 (knowledge of fraud risk "would have been brought to the attention of all relevant employees").

Further, these allegations are nearly identical to those rejected by the Sixth Circuit in *Kent*, where the panel affirmed dismissal with prejudice based on unsupported allegations that the bank defendant "knew or should have known" about the mismatch in wire instructions—specifically where, as here, plaintiff's proposed inferences rested on allegations of negligence at the time of account opening. *See* 2024 WL 945239, at *1. This Court should follow that lead and dismiss Plaintiff's claim under Ohio Rev. Code Ann. § 1304.62 for identical reasons.

### 2. Plaintiff cannot state a claim under Ohio Rev. Code Ann. § 1304.62 because Plaintiff is not in privity with PNC Bank.

Plaintiff's claim under Ohio Rev. Code Ann. § 1304.62 should be dismissed for another reason: the claim requires privity, which Plaintiff, not being a PNC Bank customer, does not have. Under the UCC, a wire transfer is comprised of a series of payment orders. Ohio Rev. Code Ann. § 1304.51. The first payment order is initiated by an "originator," here, Plaintiff. *Id.* § 1304.51(A)(11). The originator's bank (here, Bank of New Zealand (BNZ), operating through Citi as a U.S. intermediary), receives the payment order from the originator. *Id.* § 1304.51(A)(12). The second payment order in the series is initiated by the originator's bank (again, BNZ/Citi), which is sent to the beneficiary's bank (here, PNC Bank). *Id.* § 1304.51(A)(4). PNC Bank then accepted the payment order and credited it to PNC Bank's accountholder. *Id.* § 1304.64(B). The payment orders comprising the wire transfer can be visually depicted as follows:



8

This process, and the related distinctions between the originator's bank and the beneficiary's bank, are crucial to assessing UCC liability in this context. The UCC limits the originator of a wire transfer order to asserting a claim against its own bank (i.e., the originator's bank). A wire originator (here, Plaintiff) lacks standing to assert a claim against the beneficiary's bank (here, PNC Bank), which is downstream from the originator's bank. *See Grain Traders v. Citibank, N.A.*, 160 F.3d 97, 102 (2d Cir. 1998) (holding that a party may only sue the bank with which it directly dealt because "[t]o allow a party to, in effect, skip over the bank with which it dealt directly, and go to the next bank in the chain would result in uncertainty as to rights and liabilities, would create a risk of multiple or inconsistent liabilities, and would require intermediary banks to investigate the financial circumstances and various legal relations of the other parties to the transfer"). In other words, Article 4A incorporates a privity requirement.

Applying this principle, dozens of federal courts have dismissed claims against beneficiary banks under state-law implementations of § 4A-207 for lack of privity between a plaintiff and a bank defendant. *See Imperium Logistics, LLC v. Truist Fin. Corp.*, 686 F. Supp. 3d 600, 605 (E.D. Mich. 2023); *Approved Mortgage Corp. v. Truist Bank*, 106 F.4th 582, 590 (7th Cir. 2024); *Zhejiang Matrix SCM Co. v. PNC Bank*, 2024 WL 1096534 (E.D. Pa. Mar. 13, 2024); *Wheels on the Bus Inc. v. Wells Fargo Bank, N.A.*, 2023 N.Y. Misc. LEXIS 2221, at *7 (N.Y. Sup. Ct. Suffolk Cty. 2023); *Munn v. Wells Fargo Bank, N.A.*, 2023 N.Y. Misc. LEXIS 33570, at *6 (N.Y. Sup. Westchester Cty. Jan. 9, 2023); *Scura, Wigfield, Heyer, Stevens & Cammarota LLP v. Citibank, N.A.*, 2022 WL 16706948 (D.N.J. Oct. 3, 2022); *Wellton Int'l Express v. Bank of China (Hong Kong)*, 612 F.Supp.3d 358

9

(S.D.N.Y. Apr. 3, 2020); *Simple Helix, LLC v. Relus Techs.*, *LLC*, 493 F. Supp. 3d 1087, 1101–02 (N.D. Ala. 2020).

It is undisputed that no privity exists between Plaintiff—who is a customer of BNZ (*see* Compl. ¶ 3)—and PNC Bank. In the absence of privity, Plaintiff's Ohio §1304.62 claim fails and should be dismissed.

### B. Plaintiff has failed to state a claim for negligence.

In Ohio, a claim for negligence requires "the existence of a duty on the part of the one sued not to subject the one seeking recovery to the injury complained of, a failure to observe such duty, and an injury resulting proximately therefrom." *Towne Auto Sales, LLC v. Tobsal Corp.*, 2017 WL 5467012, at *2 (N.D. Ohio Nov. 14, 2017). Plaintiff's negligence claim fails because under Ohio law, PNC Bank does not owe a duty of care to non-customers such as Plaintiff, and no such duty is created by federal banking law or PNC Bank's internal policies and procedures.

### 1. Banks owe no duty of care to non-customers.

"The almost-universal law in this country is that banks owe a duty of care only to their own customers." *SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 357 (6th Cir. 2014) (applying Michigan law); *see also GSR Mkts. Ltd. v. McDonald*, 2024 WL 3311315, at *1 (11th Cir. July 5, 2024) (Georgia law); *B-Smith Enter., LP v. Bank of Am., N.A.*, 2023 WL 2034419, at *3 (11th Cir. Feb. 16, 2023) (Florida law); *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 519 (5th Cir. 2018) (Missouri law); *Adkins v. Sogliuzzo*, 625 F. App'x 565, 569–70 (3d Cir. 2015) (New Jersey law); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Raczkowski*, 764 F.3d 800, 806 (8th Cir. 2014) (Missouri law); *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 224–27 (4th Cir. 2002) (North Carolina

10

law); *VIP Mortg. Corp. v. Bank of Am., N.A.*, 769 F. Supp. 2d 20, 27 (D. Mass. 2011) (Massachusetts law).

Ohio law adheres to that consensus. *Towne Auto*, 2017 WL 5467012, at *2 ("Ohio follows the prevailing rule that a bank owes no duty to a person who is neither a customer nor an account-holder."); *Parlin Fund LLC v. Citibank N.A.*, 2013 WL 3934997, at *7 (S.D. Ohio July 30, 2013) (same). "The reasoning behind this rule is simple and sensible—if banks owed duties to non-customers, they would be exposed to unlimited liability for unforeseeable frauds." *Id.* (citing *Driessen v. Woodforest Nat. Bank*, 940 F. Supp. 2d 584, 591 (S.D. Ohio 2013)).

Plaintiff does not—and cannot—allege that he is a customer of PNC Bank. Compl. ¶ 3. His negligence claim, therefore, fails on that basis. *See Parlin Fund*, 2013 WL 3934997, at *7 (dismissing negligence claim where plaintiff was not a bank customer, "did not have an account at the bank, and did not communicate with the bank"); *Towne Auto*, 2017 WL 5467012, at *2 (same); *Foster v. PNC Bank*, 2024 WL 2883473, at *3 (N.D. Ohio May 3, 2024) (same).

### 2.     The Bank Secrecy Act does not give rise to a duty of care.

Nor can Plaintiff sustain a negligence claim by alleging that PNC Bank failed to abide by Know Your Customer (KYC) and Customer Identification Program (CIP) obligations. Compl. ¶¶ 77–78. The Complaint alludes to, but does not specify the legal basis for, those obligations. *Id.* ¶¶ 21–22. In fact, they arise from the Bank Secrecy Act. *See, e.g., Sharkey v. J.P. Morgan Chase & Co.*, 805 F. Supp. 2d 45, 48 n. 1 (S.D.N.Y. 2011) ("KYC is a policy implemented by banks to conform to a Customer Identification Program . . . mandated by the Bank Secrecy Act, Title III of the USA PATRIOT Act, and federal regulations to prevent, inter alia, money laundering and terrorist financing.").

11

It is universally recognized, however, that the Bank Secrecy Act does not create a private right of action *or* a duty of care giving rise to a negligence claim. *See Kent*, 688 F. Supp. 3d at 616 ("KGP alleges that Citizens breached its statutory duties under the Patriot and Bank Secrecy Acts when it opened the fraudulent account. If true, this renders Citizens liable to the government, not KGP. . . . Holding otherwise would, in essence, require banks to guarantee its customers' (or here, third-party wire transferors') transactions: a concept that courts nationwide have summarily rejected."); *see also, e.g., Miller v. Bank of Am., N.A.*, 2022 WL 3704093, *4 (E.D. Cal. Aug. 26, 2022); *Shecter Landscaping, Inc. v. JPMorgan Chase Bank NA*, 614 F. Supp. 3d 553, 558 (E.D. Mich. 2022); *Hofschutle v. Suntrust Banks, Inc.*, 2021 WL 5230732, *4 (N.D. Ga. March 4, 2021) (summarizing cases). Plaintiff's negligence claim thus fails to the extent it relies on ostensible tort duties created by federal law.

### 3. PNC Bank's policies and procedures do not give rise to a duty of care.

In the alternative, Plaintiff alleges that PNC Bank's own unspecified "internal policies" created a duty of care to Plaintiff. Compl. ¶ 78. As an initial matter, that claim fails under *Iqbal* and *Twombly* because Plaintiff does not allege nor identify what PNC Bank's internal policies are, or how they were violated. But even if this Court were to assume that specific policies exist and that PNC Bank's alleged activity might have been inconsistent with them, that would still not sustain a claim for negligence, because Plaintiff must first establish an independent legal duty. *See Gray v. Ben*, 2022 WL 16859609, at *5 (C.D. Cal. Nov. 9, 2022) ("[B]anks' policies and procedures do not create a duty of care. Plaintiffs must first establish an independent legal duty. Then they may rely on a bank's

failure to comply with its own policies and procedures as evidence of a breach of the duty.") (summarizing cases).

As detailed *supra*, Plaintiff has failed to establish an independent legal duty, because no freestanding duty to non-customers exists, and federal law does not create such a duty. Consequently, the content of PNC Bank's policies and procedures, and its compliance with them, are irrelevant for purposes of assessing whether Plaintiff has pleaded a negligence claim, and that claim should be dismissed.

### C.      Plaintiff has failed to state a claim for conversion.

#### 1.      Plaintiff's conversion claim is preempted by the UCC.

Ohio law, consistent with the national consensus, holds that "the UCC provides the exclusive remedy where the dispute is governed by its statutory provisions. Common law causes of action may not be raised to circumvent the UCC's rights, claims, and defenses where the statute applies." *Dice v. White Fam. Cos.*, 878 N.E.2d 1105, 1111 (Ohio Ct. App. Oct. 26, 2007). The rationale is simple:

> In the drafting of Article 4A, a deliberate decision was made to write on a clean slate and to treat a funds transfer as a unique method of payment to be governed by unique rules that address the particular issues raised by this method of payment. A deliberate decision was also made to use precise and detailed rules to assign responsibility, define behavioral norms, allocate risks and establish limits on liability. . . . The rules that emerged represent a careful and delicate balancing of those interests and are intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article. Consequently, resort to principles of law or equity outside of Article 4A is not appropriate to create rights, duties and liabilities inconsistent with those stated in this Article.

UCC § 4A-102, cmt.; *Dice,* 878 N.E.2d at 1111 ("[P]arties may not rely on a common law action to avoid the clear mandates of the UCC[.]"); *Thompson*, 2016 WL 5076053, at *4 ("When UCC Article 4A applies to common law claims, the UCC displaces those common

13

law claims."). *See also generally Wright v. Citizen's Bank of E. Tennessee*, 640 F. App'x 401, 407 (6th Cir. 2016).

Here, Plaintiff's conversion claim asserts that PNC Bank is liable under the common law for allowing the beneficiary accountholder to withdraw the funds at issue, and for continuing to hold certain retained funds. (*See* Compl. ¶¶ 89–92). But as set forth *supra* in Section IV.A.2, UCC Article 4A governs "Funds Transfers," which are defined as "the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order." Ohio Rev. Code Ann. § 1304.51. This Court has recognized that wire transfers fall within that definition. *See Thompson v. Citizens Nat'l Bank*, 2016 WL 5076053, at *4 (N.D. Ohio Sept. 20, 2016) ("Article 4A of the UCC governs commercial wire transfers.").

Other courts have recognized that identical common-law conversion claims—i.e., those predicated on allegations that a bank wrongfully disbursed, or did not return, funds following an alleged mismatch in beneficiary name and account number—are displaced by the UCC. *See, e.g., Title, Inc.,* 2024 WL 3761258, *5–6 (E.D. Mich. Aug. 12, 2024) ("[C]ommon law and statutory conversion claims are preempted by Article 4A because imposing liability on a receiving bank for declining to agree to cancel a funds transfer is inconsistent with Article 4A."); *Sunset Cmty. Health Ctr., Inc. v. Cap. One Fin. Corp.*, 652 F. Supp. 3d 1020, 1029 (D. Minn. 2023) ("[Plaintiff's conversion claim is] based on the idea that Capital One is wrongfully exercising control over the remaining funds, which are [Plaintiff's] property. This theory flows directly from [Plaintiff's] claim that Capital One could not accept the funds transfer under the UCC because of its alleged knowledge of the misdescribed beneficiary. Whether Capital One properly accepted a misdescribed wire

14

transfer is addressed in § 4A-207."); *Kirschner v. Wells Fargo Bank*, 2021 WL 5545957, *2–3 (E.D. Mich. July 19, 2021) (dismissing conversion claim as preempted). This claim should be dismissed for the same reason.

### 2.     Plaintiff has failed to plead the elements of conversion.

Plaintiff's conversion claim must also be dismissed for failure to state a substantive claim. Under Ohio law, the tort of conversion represents (1) the wrongful exercise of dominion over property to the exclusion of the rights of the owner or (2) withholding property from the owner's possession under a claim inconsistent with the owner's rights. *RAE Assocs., Inc. v. Nexus Commc'ns, Inc.*, 36 N.E.3d 757, 765 (Ohio Ct. App. June 4, 2015). "The elements of this cause of action are therefore that: (1) the plaintiff had ownership or right of possession of the property at the time of conversion; (2) the defendant's conversion by a wrongful act or disposition of plaintiff's property or property rights; and (3) damages resulted therefrom." *Id*. "It is fundamental that a plaintiff in a conversion action must show title or rightful ownership of the chattel, including money, at the time of the alleged conversion." *Id*.

As a general rule, beneficiary banks are not liable for conversion to the originator of a payment order because when the payment order is accepted and the beneficiary's account is credited, the originator's interest in the funds is extinguished. *See Kirschner*, 2021 WL 5545957, at *3 (summarizing cases); *see also Collins v. Nat'l City Bank*, 2003 WL 22971874, at *3 (Ohio Ct. App. Dec. 19, 2003) (upholding dismissal of a non-customer's conversion claim relating to funds held in a customer's account). As a result, the Complaint fails to state a cognizable claim against PNC Bank for conversion, and that claim should be dismissed with prejudice.

15

## V.     **CONCLUSION**

For all of the foregoing reasons, Plaintiff has failed to state a claim upon which relief can be granted, and re-pleading would be futile. Accordingly, the Complaint should be dismissed with prejudice.

Dated: February 18, 2025                                Respectfully submitted,

<div style="margin-left:50%">

*/s/ Thomas F. Burke*
John F. Marsh, Trial Attorney (0065345)
John P. Miller (0097161)
**Bailey Cavalieri LLC**
10 West Broad Street, Suite 2100
Columbus, Ohio  43215-3422
Telephone No. (614) 221-3230
Facsimile No. (614) 221-0479
Email:  jmarsh@baileycav.com
             jmiller@baileycav.com

Thomas F. Burke, Esq. (*pro hac vice*)
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA  19103-7599
T: 215.864.8463
F: 215.864.8999
Email:   burket@ballardspahr.com

*Counsel for Defendant, PNC Bank, N.A.*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that, on February 18, 2025, true and correct copies of the foregoing motion papers were served through the Electronic Case Filing System for the United States District Court for the Northern District of Ohio (the "ECF system") upon the following counsel of record:

Jennifer L. Williams
Summa - South Pasadena
Ste. 117
1010 Sycamore Avenue
South Pasadena, CA 91030
213-260-9456
Fax: 213-835-0939
Email: jenn@summallp.com

Diane M. Menashe
Menashe Law
1330 Dublin Road
Columbus, OH 43215
614-221-6500
Fax: 614-481-0904
Email: diane@menashelawgroup.com

*Counsel for Plaintiff Kipley Roydon Marks*

Those motion papers are available for viewing and downloading from the ECF system.

Dated: February 18, 2025

*/s/ Thomas F. Burke*
Thomas F. Burke