**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**AT CLEVELAND**

| | | |
|---|---|---|
| **KIPLEY ROYDON MARKS,** | : | **Case No.: 1:24-CV-02145-JPC** |
| | : | |
| **Plaintiff,** | : | **Judge Phillip J. Calabrese** |
| | : | **Magistrate Judge Jonathan D. Greenberg** |
| **vs.** | : | |
| | : | |
| **PNC BANK, N.A.,** | : | |
| *Et al.* | : | |
| | : | |
| **Defendants.** | : | |

---

### DEFENDANT CITIBANK, N.A.'S MOTION TO DISMISS

---

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Citibank, N.A. ("Citibank") moves to dismiss Plaintiff Kipley Roydon Marks's ("Plaintiff") Complaint (ECF No. 1, Complaint ("Compl.")) for failure to state a claim upon which relief may be granted.

A Memorandum in Support follows.

/s/ Kara A. Czanik
Kara A. Czanik (0075165)
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Tel:  (513) 832-5487
Fax:  (513) 977-8141
Email: kara.czanik@dinsmore.com

*Counsel for Defendant Citibank, N.A.*

**TABLE OF CONTENTS**

I.    INTRODUCTION. ............................................................................................................... 1

II.    PERTINENT FACTUAL BACKGROUND. ........................................................................ 1

III.  THE COURT SHOULD GRANT THE MOTION TO DISMISS THE COMPLAINT AGAINST CITIBANK. .................................................................................................... 2

    A.    Standard of Review. .............................................................................................. 3

    B.    Plaintiff's Ohio Rev. Code Ann. § 1304.62 Claim Fails as a Matter of Law. ..................... 4

        1.    Citibank is Not the Originating Bank. ................................................................ 5

        2.    Plaintiff's Claim Fails because he Lacks Privity with Citibank. ................................... 7

IV.  CONCLUSION. ............................................................................................................... 8

## **TABLE OF AUTHORITIES**

**Cases**

*Approved Mortg. Corp. v. Truist Bank,* 106 F.4th 582, 590 (7th Cir. 2024) ................................... 7

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)...................... 3, 4

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)................................................................................................................................... 3, 4

*Elkin Valley Baptist Church v. PNC Bank, N.A.*, 748 F.Supp.3d 293 (W.D. Pa. 2024) ................. 7

*Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)........................ 3

*Grain Traders v. Citibank, N.A.*, 160 F.3d 97, 102 (2d Cir. 1998).............................................. 4, 7

*Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)................................................................ 3

*Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012)............................................................... 3

*Peter E. Shapiro, P.A. v. Wells Fargo Bank, N.A.*, 795 F. App'x 741, 744 (11th Cir. 2019)............ 1

*United States v. Davis*, 2023 WL 195159, at *6 n.3 (3d Cir. Jan. 17, 2023).................................. 1

*Welton Int'l Express v. Bank of China (Hong Kong)*, 612 F. Supp. 3d 358, 361, 634 (S.D. N.Y. 2020) ........................................................................................................................... 7, 8

**Ohio Revised Code**

Ohio Rev. Code § 1304.62 (U.C.C. § 4-A-207) ...................................................... 2, 4, 5, 6, 7, 8

Ohio Rev. Code § 1304.51 ...................................................................................................... 4, 6

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 12(b)(1) .............................................................................................................. 3

Fed. R. Civ. P. 12(b)(6) .............................................................................................................. 3

Fed. R. Civ. P. 8(a)(2) ............................................................................................................... 4

**Secondary Materials**

Federal Bureau of Investigation, Business Email Compromise and Real Estate Wire Fraud, 4 (2022)........................................................................................................................................ 1

**MEMORANDUM IN SUPPORT**

## I.     **INTRODUCTION.**

Plaintiff alleges he fell victim to a "business email compromise" scam, which relies on "deception and social engineering to convince victims—including companies . . . to send money, usually via wire transfer, to bank accounts controlled by criminal actors." *United States v. Davis*, 2023 WL 195159, at \*6 n.3 (3d Cir. Jan. 17, 2023) (quoting Federal Bureau of Investigation, Business Email Compromise and Real Estate Wire Fraud, 4 (2022)).

The typical business email compromise scam follows a well-worn pattern. *See generally, e.g., Peter E. Shapiro, P.A. v. Wells Fargo Bank, N.A.*, 795 F. App'x 741 (11th Cir. 2019). Typically, the fraudster hacks into someone's email account and, by monitoring the account, learns that the accountholder expects to receive a wire transfer. Using the hacked email account, the fraudster poses as the accountholder (*e.g.*, a party expecting payment) and sends an email to the client or customer who intends to wire funds. The fraudster sends new wire instructions, thereby redirecting funds to a different bank account number.

From there, the victim follows the fraudster's instructions, typically ordering a wire transfer naming the intended payee but directing funds to some account that does not belong to the intended payee—*i.e.*, the bank account specified by the fraudster. The bank that ultimately receives the wire transfer, therefore, credits the money to the account identified by number in the wire transfer order, often using an entirely automated system. The accountholder, who may be a fraudster or a "middle man" in the fraudster's scheme, withdraws the money and may never be found.

As one Circuit Court has observed, "[a] quick phone call from the [victim] to [the intended payee] before initiating the wire probably would . . . reveal[] the fraud and save[] the

1

parties a great deal of time and money." *Id*. at 744 n.4. Unfortunately, it appears that no such call was made here. Instead, Plaintiff alleges that, despite exchanging emails regarding payments and wiring instructions with the intended recipient, a fraudster subsequently sent him "updated" wiring instructions with a different account number. Plaintiff disregarded the original wire instructions and, without verifying the new instructions with his intended recipient, wired funds as the fraudster directed to an account PNC Bank.

As to Citibank, Plaintiff's allegations are sparse. That is because Citibank was merely an intermediary bank, which had neither a direct relationship with Plaintiff nor the beneficiary. Here, Plaintiff—the originator—sent a payment order to his bank, BNZ, which was the originating bank in the "at-issue transaction." Citibank, in turn, serving as the intermediary or "correspondent" bank, followed BNZ's instructions, transferring funds to PNC, which was the beneficiary bank for onward transfer to its customer, *i.e.*, the beneficiary. Plaintiff incorrectly alleges that Citibank "operated as the originating bank in the at-issue transaction." Plaintiff has asserted a single claim against Citibank for violation of Ohio Rev. Code § 1304.62, which codified U.C.C. § 4-A-207. Plaintiff's claim fails because Citibank did not operate as the originating bank and, further, lacks privity with Plaintiff.

## II.    **PERTINENT FACTUAL BACKGROUND.**

Plaintiff is a citizen of New Zealand. (ECF No. 1, Compl. at ¶ 3.) Plaintiff sought to invest in Nyriad Inc., a company located in California. *Id*. In or about December 2022, after "the Nyriad CFO emailed Plaintiff wire instructions to Nyriad's account at Silicon Valley Bank," a fraudster "used a spoofed email address to email Plaintiff with 'confirmation' of the share purchase price and 'updated' wire instructions." *Id*. at ¶¶ 13–14. Plaintiff, apparently without

2

further confirmation, wired $1 million, through Bank of New Zealand ("BNZ"), to the fraudster's PNC Bank account on or about December 15, 2022. *Id*. at ¶ 15.

As to Citibank, Plaintiff pertinently alleges that, on the same day, BNZ instructed Citibank via SWIFT message (a secure network for bank-to-bank communication) to send funds to PNC Account No. X6837 * * * ," *id* at ¶17, and Citibank promptly followed through on such instructions.

### III.  THE COURT SHOULD GRANT THE MOTION TO DISMISS THE COMPLAINT AGAINST CITIBANK.

#### A.  Standard of Review.

Rule 12 of the Federal Rules of Civil Procedure provides for this Court to dismiss claims for "lack of subject-matter jurisdiction" and for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(1) and (6). In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc*., 684 F.3d 605, 608 (6th Cir. 2012), citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. *Id.*, quoting Fed. R. Civ. P. 8(a)(2). "[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.*, quoting *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Although the plaintiff need not plead specific facts, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Id.*, quoting *Twombly*, 550 U.S. at 555, 570. A plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that

3

the defendant is liable for the misconduct alleged." *Id*., quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

**B.** **Plaintiff's Ohio Rev. Code Ann. § 1304.62 Claim Fails as a Matter of Law.**

Plaintiff does not identify which provision of § 1304.62 he alleges Citibank violated. The situation alleged here, i.e., where a payment order describes a beneficiary by a name and a bank account number that identify different persons, is governed by the Uniform Commercial Code (UCC) Article 4A, § 4A-207 ("Misdescription of Beneficiary").

"Article 4-A of the UCC governs the procedures, rights, and liabilities arising out of commercial electronic funds transfers." *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 100 (2d Cir. 1998). Ohio Rev. Code 1304.51(A)(6). Plaintiff asserts a claim under UCC section § 4A-207, which is codified in Ohio law as Ohio Rev. Code § 1304.62, and states:

> (A) Subject to division (B) of this section, if, in a payment order received by the beneficiary's bank, the name, bank account number, or other identification of the beneficiary refers to a nonexistent or unidentifiable person or account, no person has rights as a beneficiary of the order and acceptance of the order cannot occur.
>
> (B) If a payment order received by the beneficiary's bank identifies the beneficiary both by name and by an identifying or bank account number and the name and number identify different persons, the following rules apply:
>
> (1) Except as otherwise provided in subsection (C), if the beneficiary's bank does not know that the name and number refer to different persons, it may rely on the number as the proper identification of the beneficiary of the order. The beneficiary's bank need not determine whether the name and number refer to the same person.
>
> (2) If the beneficiary's bank pays the person identified by name or knows that the name and number identify different persons, no person has rights as beneficiary except the person paid by the beneficiary's bank if that person was entitled to receive payment from the originator of the funds transfer. If no person has rights as beneficiary, acceptance of the order cannot occur.
>
> (C) If a payment order described in division (B) of this section is accepted, the originator's payment order described the beneficiary inconsistently by name and number,

4

and the beneficiary's bank pays the person identified by number as permitted by division (B)(1) of this section, both of the following apply:

(1) If the originator is a bank, the originator shall pay its order.

(2) If the originator is not a bank and proves that the person identified by number was not entitled to receive payment from the originator, the originator is not obliged to pay its order unless the originator's bank proves that the originator, before acceptance of the originator's order, had notice that payment of a payment order issued by the originator might be made by the beneficiary's bank on the basis of an identifying or bank account number even if it identifies a person different from the named beneficiary. Proof of notice may be made by any admissible evidence. The originator's bank satisfies the burden of proof if it proves that the originator, before the payment order was accepted, signed a writing stating the information to which the notice relates.

(D)  In a case governed by division (B)(1) of this section, if the beneficiary's bank rightfully pays the person identified by number and that person was not entitled to receive payment from the originator, the amount paid may be recovered from that person to the extent allowed by the law governing mistake and restitution as follows:

(1) If the originator is obliged to pay its payment order as stated in division (C) of this section, the originator may recover.

(2) If the originator is not a bank and is not obliged to pay its payment order, the originator's bank may recover.

UCC § 4A-207; Ohio Rev. Code Ann. § 1304.62.

### 1.  Citibank is Not the Originating Bank.

Though not explicit, Plaintiff appears to be relying on R.C. §1304.62(C).  *See* Compl. at ¶¶70-72.[1]  This provision would essentially absolve the originator—here, Plaintiff—from payment of an order if the originator's bank failed to notify him that payment would be made by the beneficiary's bank on the basis of a bank number even if it identifies a person different from the named beneficiary. The problems with this theory are many.

---

[1] Plaintiff does not specify which provision of § 1304.62 he alleges Citibank violated, but it appears that Section (C) applies based on the Complaint's allegation that "[b]efore [Citibank] accepted the Plaintiff's wire order, Plaintiff had no notice that payment of a payment order might be made by PNC on the basis of an identifying or bank account number even if such number identifies a person different from the named beneficiary."  Complaint, at ¶72.

5

As an initial point, section 1304.62(C) concerns the relationship between an originator—here, Plaintiff—and his own bank, which was BNZ.  The Plaintiff is not a Citibank customer, and, thus, Citibank is not the "originator's bank" as §1304.62(C) requires. For the at-issue transaction, Citibank is a mere intermediary bank, standing between the originating bank (*i.e.*, BNZ) and the beneficiary bank (*i.e.*, PNC).  This is further elucidated in the definitions set forth at O.R.C. §1304.51, which defines "originator" as "the sender of the first payment order in a funds transfer." *Id*. at (A)(11). Here, Plaintiff meets that definition.  Compl. at ¶15 ("On December 15, 2022, Plaintiff instructed BNZ to wire $1,000,000 in US Dollars to PNC for * * * Nyriad * * *, Account No. X6837.").   "Originator's bank" is then defined under Ohio law as "the receiving bank to which the payment order of the originator is issued if the originator is not a bank [.]" O.R.C. §1304.51(A)(12).  Here, "originator's bank" was BNZ, to which Plaintiff, a natural person (and not himself a bank) gave the payment order.  *Id*.  By contrast, an "intermediary bank" refers to any other "receiving bank other than the originator's bank or the beneficiary's bank," *id*. at (A)(10)—and Citibank fits this definition in the at-issue transaction.

The definition of "funds transfer" further elucidates the different roles:

> Funds transfer means the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order. 'Funds transfer' includes any payment order issued by the originator's bank or an intermediary bank intended to carry out the originator's payment order. A funds transfer is completed by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary of the originator's payment order.

O.R.C. § 1304.51(A)(6). Section 1304.62(C) applies to "originator" banks, not intermediaries. Intermediaries lack direct contact or privity with the originator and thus would not be expected to provide the notice required by section 1304.62(C). Permitting suit to proceed against Citibank, a mere intermediary which lacks privity with Plaintiff, undermines "Article 4A's goal of 'certainty

and finality,'" and creates "'uncertainty as to rights and liabilities' that may result from allowing a party seeking a refund to 'skip over the bank with which it dealt directly, and go to the next bank in the chain.'" *Approved Mortg. Corp. v. Truist Bank,* 106 F.4th 582, 590 (7th Cir. 2024) (quoting *Grain Traders v. Citibank, N.A*., 160 F.3d 97, 102 (2d Cir. 1998)).

### 2. **<u>Plaintiff's Claim Fails because he Lacks Privity with Citibank</u>.**

PNC and Plaintiff briefed whether privity is required to bring a claim under § 1304.62. Citibank does not want to waste the Court's time by rehashing those arguments. Citibank instead incorporates PNC's arguments contained in its motion to dismiss (ECF No 10) and reply (ECF No. 16).

Specifically, Citibank urges the Court to follow the majority of courts requiring privity as opposed to the outlier cited by Plaintiff, *Elkin Valley Baptist Church v. PNC Bank, N.A*., 748 F.Supp.3d 293 (W.D. Pa. 2024), which importantly still prevented the plaintiff from recovering *damages* against the beneficiary.

*Welton Int'l Express v. Bank of China (Hong Kong)*, 612 F. Supp. 3d 358 (S.D. N.Y. 2020) is particularly instructive because it addressed the liability of an intermediary under New York's version of 4A-207 and granted the intermediary's motion to dismiss. Welton International and Welton Express brought an action against Wells Fargo Bank PLC ("Wells Fargo")*,* JP Morgan Chase Bank ("JP Morgan")*,* and Bank of China (Hong Kong) ("BOC") alleging harm regarding a wire transfer payment that was erroneously made to a fraudster. *Id*. at 361. Welton International maintained an account with BOC from which it regularly made payments to Welton Express's JP Morgan account. *Id*. Welton International owed Welton Express $152,357.61 for services rendered, and Welton Express requested payment. *Id*. Welton International, however, received a fraudulent email requesting that the money be wired to a

7

Wells Fargo account. *Id*. As a result, Welton International erroneously wired the money from its BOC bank account to the Wells Fargo bank account pursuant to the fraudulent email. *Id*. JP Morgan was an intermediary bank in the transfer. *Id*. Despite attempts to prevent the transaction, the money was transferred into the fraudster at a Wells Fargo account. *Id*. Welton International filed the lawsuit seeking reimbursement from defendants. The court granted Wells Fargo and JP Morgan's motions to dismiss:

> Second, neither Wells Fargo nor JP Morgan can be held liable under Sec. 4-A-207. Wells Fargo argues that neither plaintiff has a cause of action to sue under this provisions because they are not in privity with Wells Fargo. This argument applies with equal force to JP Morgan. Section 3-A-402 'provides the remedial scheme' for violations of Sec. 3-A-407 and Sec. 4-A-402 'incorporate[s] a 'privity' requirement . . . so that [the remedy] applies only between the parties to a particular payment order and not to the parties to the funds transfer as a whole.' As the beneficiary bank, Wells Fargo was not a party to the payment order. Neither was JP Morgan, as the intermediary bank. The payment order at issue in this case was between Welton International and BOC. Because there is a lack of privity between Plaintiffs and Wells Fargo and Plaintiffs and JP Morgan, Plaintiffs cannot maintain a cause of action against either defendant under Sec. 4-A-207.

*Id*. at 364 (internal citations omitted).

Here, as in *Welton International*, Citibank is an intermediary without privity to Plaintiff and therefore cannot be held liable under U.C.C. § 4-A-207, which is codified as Ohio Rev. Code § 1304.62.

## IV.    <u>CONCLUSION</u>.

Citibank respectfully requests that the Court grant its motion to dismiss with prejudice because Citibank is not liable because it is not the originator's bank under R.C. § 1304.62 (C), and because it lacks privity with Plaintiff.

Respectfully submitted,

/s/ Kara A. Czanik
Kara A. Czanik (0075165)
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Tel:  (513) 832-5487
Fax:  (513) 977-8141
Email: kara.czanik@dinsmore.com

*Counsel for Defendant Citibank, N.A.*

## CERTIFICATE OF SERVICE

The undersigned hereby certified that a true and accurate copy of the foregoing Motion to Dismiss was filed via the CM/E system that will send notification to all counsel of record, this 25th day of April, 2024.

/s/ Kara A. Czanik
Kara A. Czanik (0075165)

9